**William A. SCARBOROUGH**

v.

**NORTHERN ASSURANCE COMPANY OF AMERICA.**

Civ. A. No. 77–2523.

United States District Court, E. D. Louisiana.

May 7, 1981.

Stanley J. Jacobs, Ungar, Jacobs, Manuel & Kain, Lawrence D. Wiedemann, Wiedemann & Fransen, New Orleans, La., for plaintiff.

Felicien Lozes, Drury & Lozes, New Orleans, La., for defendant Northern Assur. Co. of America.

Robert B. Deane, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants Underwriters at Lloyds of London and Harbor Ins. Co.

Daniel Caruso, Simon, Peragine, Smith & Redfern, New Orleans, La., for defendant Land & Marine Applicators, Inc.

HEEBE, Chief Judge:

This cause came on for hearing on a previous day on the motion of certain Underwriters at Lloyd's of London and Harbor Insurance Company for summary judgment.

The Court, having heard the arguments of counsel and having studied the legal memoranda submitted by the parties, is now fully advised in the premises and ready to rule. Accordingly,

IT IS THE ORDER OF THE COURT that the motion of certain Underwriters at Lloyd's of London and Harbor Insurance Company be, and the same is hereby, GRANTED.

### REASONS

Underwriters at Lloyd's of London and Harbor Insurance Company provided excess insurance to Mr. Scarborough's employers, Coating Specialists, Inc. and Land & Marine Applicators, Inc., during the period of his exposure to silicosis. During this period primary insurance was provided by Northern Assurance Company of America, Inc. to Coating Specialist and by Insurance Company of North America to Land & Marine Applicators, Inc. The Court has previously ruled that the provision contained in the policies for both primary insurers excluding coverage for any claim made or suit filed over three years from the end of the policy was valid and not against public policy. Because the Court finds that this provision was validly incorporated into the excess policies of Lloyd's and Harbor's, summary judgment must be granted on their behalf. The pertinent provision in the Lloyd's policy is as follows:

This insurance is subject to the same warranties, terms, and conditions (except as

regards the premium, the amounts and limits of liability, the obligation to investigate and defend, the renewal agreement, if any, and except as otherwise provided herein) as are contained in or as may be added to the said Policy/Policies of the Primary Insurers.

The pertinent provision in the Harbor policy is the following:

## SPECIAL CONDITIONS APPLICABLE TO OCCUPATION DISEASE

As regards personal injury (fatal or nonfatal) by occupational disease sustained by any employee of the Assured, this Insurance is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability and the renewal agreement, if any) as are contained in or as may be added to the Underlying Insurances prior to the happening of an occurrence for which claim is made hereunder.

The Court finds that both the provision in the Lloyd's policy and the provision in the Harbor policy are effective to incorporate the 36-month exclusion into these policies. The Court does not find this incorporation to be in violation of Louisiana Revised Statute 22:628.

During the time that Mr. Scarborough worked for Coating Specialists and Land & Marine Applicators, Inc. and that those companies were insured by Lloyd's and Harbor, Louisiana Revised Statute 22:628 read as follows:

No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless in writing and made a part of the policy. This section shall not apply to contracts as provided in Part XV of this Chapter.

Several states have similar statutes, which are designed to protect the policyholder "by permitting the insured to know from his policy what his contract is" and "thereby largely eliminate evils growing out of uncertainty and the imposition which might otherwise be practiced." 1 G. Couch, Cyclopedia of Insurance Law § 3:20, at 143 (2d ed. 1959 & Supp.1980). The statutes

serve an important public purpose, but the Court does not believe that they were intended to apply to the excess insurance policy whose coverage almost by definition is determined by what is contained within the primary policy. This practice is not misleading, since by law the insured must have received a copy of his primary policy. A survey of Louisiana insurance cases before the Supreme Court's decision in *Spain vs. Travelers Insurance Company*, 332 So.2d 827 (La.1976), reveals no cases which would foretell the application by the Court in *Spain* of LSA–R.S. 22:628 to excess insurance policies to disallow incorporation of the terms of the underlying primary policies. Indeed, it was common practice before the *Spain* decision (and continues to be the practice) of excess insurers to base their liability upon the terms and conditions of the underlying policies. *See The Work of the Louisiana Appellate Courts for the 1975–76 Term*, 37 La.L.Rev. 305, 494 (1977). It was before this decision that Mr. Scarborough's employers purchased insurance during the period of his exposure.

The legislature overruled the Court's decision in *Spain* within a few months of the ruling. The swiftness of the amendment to the statute buttresses this Court's conclusion that the legislature did not intend for the result in *Spain* to obtain from the interpretation of the original LSA–R.S. 22:628. The 1976 amendment caused the statute to read as follows:

"No agreement in conflict with, modifying or extending the coverage of any contract of insurance shall be valid unless in writing and made a part of the policy. This section shall not apply to the following:

a. To contracts as provided in part XV of this chapter; and,

b. To contracts of reinsurance, warranties and/or excess liability insurance which incorporates by specific reference to limitations and provisions of the primary and/or underlying insurance contracts. In connection with insurance contracts wherein primary and/or underlying coverage are coupled with contracts

of reinsurance, warranties and/or excess liability insurance, the contents of all of the related contracts when read together shall constitute the entire insuring agreement.

"The provisions of this section shall apply when primary and/or underlying insurance contracts are coupled by specific reference with contracts of reinsurance, warranties and/or excess liability contracts *which are in existence as of the effective date hereof.*" (Emphasis supplied).

The clear intention of the legislature in its enactment was to validate all those policies in existence which would otherwise fall within the scope of the Court's ruling in *Spain.* Had the legislature intended a purely prospective result it would not have chosen to specifically apply the amendment to policies "in existence", but would have used other words, such as "in effect on the effective date of this enactment," or "entered into subsequent to or on the effective date of this enactment." Amendments after 1976 to LSA–R.S. 22:628 have not served to alter the effect of this statute as it applies to this policy and have continued to use the phrase "in existence" in defining which policies the amendments apply.